594 A.2d 1182

**Ebert Henry HARMONY, Sr.**

v.

**STATE of Maryland.**

**No. 1617, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Sept. 5, 1991.

L. Michael Schaech (Russell J. White and White & Karceski, on the brief), Towson, for appellant.

Mary O'Malley Lunden, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before MOYLAN, WENNER and MOTZ, JJ.

MOTZ, Judge.

Appellant, Ebert H. Harmony Sr., was convicted by a jury in the Circuit Court for Baltimore County (Smith, J.) of third degree sexual offense, fourth degree sexual offense, and battery. He was sentenced to three years imprisonment, suspended, with three years supervised probation, on the third degree sexual offense conviction and one year

imprisonment, suspended, with one year supervised probation to run concurrently, on the fourth degree sexual offense conviction. The battery conviction was merged with the fourth degree sexual offense conviction.

Appellant appeals claiming that the trial court erred in the following four respects:

1. Refusing to dismiss the criminal information because of its alleged vagueness and uncertainty.
2. Refusing to dismiss the misdemeanor counts which were assertedly barred by the statute of limitations.
3. Permitting hearsay testimony concerning statements the victim made to a relative several hours after the incident.
4. Refusing to permit the defense to explore issues of potential bias of the victim toward the appellant.

Because we do not find any error, we affirm.

## FACTS

The facts underlying this case came to light in July, 1988. Appellant went to his fourteen year old niece's home, at her request, to install a telephone which she had received as a present. When the young girl and appellant were alone in the basement, he made a comment about how much she had grown, touched her breasts, and wrapped a cord around her. She became very upset, ran upstairs and locked herself in the bathroom. When her father checked on her sometime later, she told him that "Uncle Ebert was abusing me." The young girl later telephoned her sister. The sister testified, over objection, that at some point during the evening in question, the girl had called, crying hysterically, and stating "Uncle Ebert ... grabbed me ... and this is not the first time, this has happened before."

The girl's parents did not report the incident, though they did send her to a private counselor after she began to experience nightmares because of it. This counselor informed the Department of Social Services which turned the information over to the Youth Services Division of the Baltimore County police. The police investigated the inci-

dent by speaking to the young girl and her counselor. The girl told the police that there had been other incidents involving the appellant which occurred during previous summers when she would spend several days at appellant's home.

The police filed a criminal information against the appellant on December 18, 1989, charging that he "did unlawfully cause abuse" upon a minor child, from "1980 through July of 1988." Appellant filed a motion to dismiss as well as a demand for a bill of particulars on January 5, 1990. The State responded with a bill of particulars on February 12, 1990 which stated that the alleged offenses:

> were inflicted upon the victim between the ages of six (6) years and ten (10) years (1980–1984) on numerous occasions. The events occurred during the summer months, (June, July or August) while the Defendant and his wife had care and custody of the victim two or three days per week while her parents worked. The victim did her best after age ten (10) to stay away from the Defendant and therefore, no criminal acts occurred between 1985 to 1988. In July of 1988, another incident of third degree sexual offense, as well as lesser offenses of fourth degree sexual offense and assault and battery occurred.

After further investigation by the police disclosed that some offenses did occur between 1985 and 1988, the State filed a supplemental response to the bill of particulars which stated:

> [f]rom 1985 through 1988, criminal acts did occur on a much less frequent basis than they did when the defendant and his wife babysat for the victim.... The events occurring between 1985 and 1988 occurred at several locations. These would include, the defendant's home, the victim's home, and the defendant's daughter's pool.

## LEGAL ANALYSIS

### I. Motion to Dismiss the Information

Prior to trial, appellant moved to dismiss the criminal information because of its alleged vagueness and uncertain-

ty as to time. Relying on *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989), the trial court denied the motion to dismiss. Appellant claims this decision was contrary to both the Maryland Declaration of Rights and Maryland Rule 4–202. Accordingly, we examine both sets of requirements.

1. Article 21 of the Maryland Declaration of Rights.

■ The Maryland Constitution provides that "every man hath a right to be informed of the accusation against him; to have a copy of the indictment ... to prepare for his defence." Art. 21, Md. Decl. of Rts. Appellant claims that the charging document at issue here was unconstitutional because it did not provide sufficient information as to the time and dates of the alleged offenses to enable him to "prepare for his defence."

In *Mulkey*, the Court of Appeals recently considered precisely this issue. It held that, in the context of a sex abuse case concerning a minor, when time is not an essential element of the offense, general allegations as to time are constitutionally sufficient if the actual date of the offense is unknown. 316 Md. at 484, 560 A.2d at 28. The Court explained that the "ability of a child to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory." *Id.* at 482, 560 A.2d at 27. *Accord Bonds v. State*, 51 Md.App. 102, 107, 442 A.2d 572, 575 (1982). Moreover, where the offense is of a continuing nature, it may simply be impossible for the State to provide specific dates in its charging document. *Id.*, 316 Md. at 485, 560 A.2d at 28, *citing, State v. Mancinone*, 15 Conn.App. 251, 545 A.2d 1131, 1136, *cert. denied*, 209 Conn. 818, 551 A.2d 757 (1988), *cert. denied*, 489 U.S. 1017, 109 S.Ct. 1132, 103 L.Ed.2d 194 (1989).

■ Accordingly, we conclude that the information here, stating that the offenses occurred from 1980 to 1988, is constitutionally valid under the Maryland Declaration of

Rights.[1] As in *Mulkey*, the charges here involve multiple sexual abuses of a continuing nature against a child-victim who was unable to specify exact dates or times of the various acts. Appellant was on notice well in advance of trial that the state intended to show a pattern of ongoing abuses, and thus was fully apprised of the continuing nature of the offenses, thus his ability to prepare a defense was not hampered. *See Mulkey*, 316 Md. at 489, 560 A.2d at 30; *Eberhardt v. State*, 257 Ga. 420, 359 S.E.2d 908, 909 (1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1036, 98 L.Ed.2d 999 (1988). Where the exact time and date of the crime alleged is impossible to establish, we will not allow a criminal defendant to "thwart justice" by demanding specific dates and times by raising an alibi defense. *Bonds*, 51 Md.App. at 107, 442 A.2d at 575.[2]

### 2. Maryland Rule 4–202.

Md.Rule 4–202 supplements the constitutional requirements discussed above and mandates that a charging document state "with reasonable particularity, the time and place the [charged] offense[s] occurred." To aid a trial court in its determination of whether the requirements of the rule are met in the context of a "sexual offense case involving a child victim," the *Mulkey* Court enunciated a nonexhaustive list of factors to be considered: "1) the nature of the offense; 2) the age and maturity of the child; 3) the victim's ability to recall specific dates; and, 4) the

---

1. The State suggests that we consider the bill of particulars in determining the constitutional sufficiency of the information. Whether the *Mulkey* Court intended consideration of the bill of particulars in this context is unclear. We need not reach the question because we find that the information was constitutionally sufficient without consideration of the bill of particulars.

2. Appellant was also protected by the trial process itself. Even though the State could not specify the exact dates of the offenses, the jury still had to find him guilty beyond a reasonable doubt, and that determination will often "be affected by the witness's inability to specify the day and time of the alleged crime and the subsequent inability of the defendant to establish an alibi defense over so long a period of time." *Bonds v. State*, 51 Md.App. at 108, 442 A.2d at 575.

State's good faith efforts and ability to determine reasonable dates." 316 Md. at 488, 560 A.2d at 30.

Additionally, while a bill of particulars generally may not form any part of an information or be used to correct a defective charging document, *Seidman v. State*, 230 Md. 305, 312, 187 A.2d 109, 114 (1962), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963); *State v. Morton*, 295 Md. 487, 492, 456 A.2d 909, 912 (1983), the *Mulkey* Court developed an exception to this rule. The Court held that in the limited context of a sexual offense involving a minor, the trial court should consider the information provided in a bill of particulars when determining whether the time of the offenses is stated with "reasonable particularity" in the charging document. 316 Md. at 490–91, 560 A.2d at 31.

Here, the trial court considered the criminal information *and* the bill of particulars in light of the *Mulkey* factors and concluded that the information was sufficiently particular to meet the requirements of Rule 4–202. The victim was a young girl who was abused as early as age six by a trusted relative. The offenses were of a continuing nature over a period of years, which hindered her ability to recall specific dates. Significantly, the State presented to the trial judge information regarding the extent of its knowledge of the timing of the offenses along with information regarding its good faith efforts to determine reasonable dates, just as the *Mulkey* Court mandated. *Id.* at 490, 560 A.2d at 31.[3] Moreover, the bill of particulars provided the appellant with additional information on the dates of the offenses by narrowing the time frames to 1980–1984 during the summer months; infrequently in 1985–1988 at the defendant's home, the victim's home, and the defendant's daughter's pool; and June or July of 1988. Considering the

---

3. In this case, the victim was interviewed no less than four times by the prosecutor, a detective and a social worker in the State's attempt to ascertain more specific information regarding the timing of the offenses.

circumstances of the case in light of the *Mulkey* factors, in conjunction with the bill of particulars provided by the State, the trial court was clearly within its discretion in finding that the times of the offenses were stated with "reasonable particularity".

## II. *Statute of Limitations*

■ Appellant contends that the misdemeanor counts in the criminal information (fourth degree sexual assault and battery) should have been dismissed because they were filed approximately 18 months after the last incident of abuse occurred and so were barred by the one year statute of limitations for misdemeanor prosecutions. *See* Md.Cts. & Jud.Proc.Code Ann. § 5–106(a) (1973, 1989 Repl.Vol.). Whether appellant is correct is irrelevant because he failed to raise the defense of limitations below and therefore cannot raise it for the first time before this court.

■ Limitations, in a criminal case, must be "raised" as an affirmative defense, usually before trial but at the latest, during trial. *Brooks v. State,* 85 Md.App. 355, 584 A.2d 82 (1991). Appellant claims he did just that. Although his written "motion to dismiss" was based *solely* upon his contention that the information was insufficiently particular, he claims the limitations argument was raised orally. His counsel stated, in passing: "Your Honor, with regard to the second, third, fourth and fifth counts, of course, you know, something else could come into play there, like the statute of limitations or something like that." No further reference was made to the limitations issue. Thus, the question is whether this passing reference sufficiently "raised" the matter.

■ Pursuant to Md.Rule 8–131(a), ordinarily, we do not decide any issue unless it "plainly appears by the record to have been raised in or decided by the lower court." *See Zellinger v. CRC Dev. Corp,* 281 Md. 614, 620, 380 A.2d 1064, 1067 (1977) (a contention not raised below and "not directly passed upon by the trial court is not preserved for

appellate review."). *Accord Devereux v. Berger,* 264 Md. 20, 31, 284 A.2d 605 (1971). It is clear that the limitations argument was never "decided" or "directly passed upon" by the circuit court. Nor was the question ever argued in the traditional sense. Indeed, it was barely mentioned below. *Compare, Slye v. State,* 42 Md.App. 520, 523, 401 A.2d 195 (1979). "To preserve an issue for appellate review, it must first have been *presented, with particularity,* to the trial court." *Jordan v. State,* 82 Md.App. 225, 244, 571 A.2d 238, 247, *aff'd in part, rev'd in part on other grounds,* 323 Md. 151, 591 A.2d 875 (Md.1991) (emphasis added). An offhand remark that the "statute of limitations or something like that" might "come into play" is simply not particular enough to allow appellate review. A party must bring his argument to the attention of the trial court with enough particularity that the court is aware first, that there is an issue before it, and secondly, what the parameters of the issue are. The trial court needs sufficient information to allow it to make a thoughtful judgment. *See Medley v. State,* 52 Md.App. 225, 231, 448 A.2d 363, 366 (1982).

■ Although it clearly would have been the better practice, appellant need not have filed a written motion before trial in order to meet the procedural requirements of Md. Rule 8–131. *See Brooks,* 85 Md.App. at 363–365, 584 A.2d at 86–87. He was required, however, to present the issue to the trial court with enough particularity to allow a reasoned decision upon the matter. Because he failed to do so, we will not consider the issue on this appeal.

### III. Hearsay Testimony

■ Appellant next contends that the testimony of the victim's sister as to her telephone conversation with the victim after the incident was inadmissible hearsay. At trial, the only argument on the issue was the following:

DEFENSE COUNSEL: Your Honor, if this is supposed to be a *res gestae* thing, we are talking about 10:30. I don't know what time it was when she came upstairs. I

think it was 7:30. I mean, we are talking about three hours later. I don't think that is *res gestae.*

PROSECUTOR: Your Honor, I believe [the victim's] testimony was she went into the bathroom for about 15 minutes. She came out and told her father. She went into either her room or her parent's room. I believe it was her parent's room, that had the telephone, and she proceeded to call her sister.

I don't think *res gestae* requires any immediate time limitation. It just requires that the *proponent be under the effect of the stimulating event,* whether that is ten minutes, one day, three days.

I did do research on that point, and I think *what is important is not so much the time but the proponent's demeanor and their excited state, and I certainly would like to lay the foundation, that she was upset.*

THE COURT: *Yes, I'm going to overrule the objection at this point.*

This witness says it was 10:30, and the father testified it was later than seven when he came home. She said it was ten to 15 minutes afterward.

All of this can be corrected. It could have been much, much later than when the father testified he came home. The father testified he came home at seven o'clock or later, so I don't know.

I don't believe it would be *res gestae,* but I think there is enough foundation that this occurred shortly after the incident, and I am going to overrule the objection.

(emphasis added). Although both appellant and the State assert that this ruling was on the admissibility of testimony as to the *contents* of the telephone call, in fact, it is clear from the portion of the transcript set forth above and its context in the record that this was *not* the subject of the trial court's ruling. Rather, the circuit court was simply ruling that the prosecutor could, as he requested, "lay the foundation" for a hearsay exception, *i.e.,* proponent's "demeanor" and "excited state." After testimony was elicited as to this foundation, specifically that victim was "crying

hysterically" and could barely be understood, then, and only then, did the prosecutor ask her sister what was said. Defense counsel did object then, but there was no argument on the point, and the objection was overruled.

It is unfortunate that counsel resurrected the time-worn phrase, *res gestae*. This phrase encompasses a family of spontaneous statements which are exceptions to the hearsay rule, *i.e.*, statements of present bodily condition, statements of mental state, excited utterances, and unexcited statements of present sense impression. *Cassidy v. State*, 74 Md.App. 1, 13, 536 A.2d 666, 672, *cert. denied*, 312 Md. 602, 541 A.2d 965 (1988). Each of these exceptions should be analyzed on its own terms when determining the admissibility of certain testimony, and should not be muddled under the catch-all phrase of *res gestae*. The circuit court properly rejected the characterization of this evidence as *res gestae* and so do we. Although the prosecutor erroneously referred to it as such, the totality of his argument (see underscored portion above) makes it clear that he was actually laying the foundation for and urging the admissibility of this evidence as an excited utterance. The trial court properly permitted him to lay this foundation and, once it was laid, properly admitted this testimony.

Maryland firmly endorses the principle of the "excited utterance" exception to the hearsay rule. See *Moore v. State*, 26 Md.App. 556, 566, 338 A.2d 344, 349 (1975) for a list of cases upholding the use of the excited utterance exception. A statement may be admitted under this exception if "the declaration was made at such a time and under such circumstances that the exciting influence of the occurrence clearly produced a spontaneous and instinctive reaction on the part of the declarant ... [who is] still emotionally engulfed by the situation...." *Deloso v. State*, 37 Md.App. 101, 106, 376 A.2d 873, 876 (1977) (citations omitted). Thus, the length of time between the declaration and the occurrence is a consideration not only of whether it was made spontaneously, but also of whether the declarant was

"still emotionally engulfed." *Id.* Time, however, is *not* a conclusive factor.

The utterance need not be contemporaneous or simultaneous with the principal act. While it may be subsequent to it, it must be established that the exciting influence has not lost its sway or been dissipated by meditation. But the crucial factor is not so much the lapse of time or change of location but the continuance of a situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived expression of the speaker's will.

*Id.*, 376 A.2d at 877 (citations omitted).

Appellant claims that because the declaration was made three hours after the incident, the victim "was not in the extreme condition of physical shock" but rather the "three hour period ... makes it much more likely that reflective thought was involved." Appellant rests his argument on *Cassidy v. State*. There, we commented in *dicta* that our previous decision of *Smith v. State*, 6 Md.App. 581, 252 A.2d 277 (1969)—where we upheld a time lapse of four-and-a-half to five hours—"seems to represent the extreme outer limit" of the excited utterance concept. *Cassidy*, 74 Md. App. at 20, 536 A.2d at 676.

This *dicta* obviously does not require reversal here. So long as the declarant, at the time of the utterance, was still in the throes of the "exciting event" and therefore not capable of reflective thought, and sufficient foundation was laid to enable the trial court to reach this conclusion, the statement is be admissible. *See Id.* at 19, 536 A.2d at 675. We hold that the facts surrounding the victim's statements to her sister clearly satisfied the requirements of the excited utterance exception. The victim was upset enough after the incident to lock herself in a bathroom, crying. When she called her sister she was still crying. Additionally, the call was made in the course of the same evening as the incident of abuse. Given this, it was unlikely that the "exciting influence" of the incident had subsided to the

extent that she was capable of forethought or deliberate design in her conversation with her sister. The question of whether the statement is admissible lies entirely within the trial court's discretion. *Johnson v. State,* 63 Md.App. 485, 495, 492 A.2d 1343, 1348, *cert. denied,* 304 Md. 298, 498 A.2d 1185 (1985). Under the circumstances of this case, the circuit court was presented with sufficient foundation to find that the statement was uttered spontaneously, and thus, did not abuse its discretion, in admitting the statement.

Moreover, in addition to the excited utterance exception, the sister's testimony was also properly admitted as a timely complaint of a sexual attack. *State v. Werner,* 302 Md. 550, 489 A.2d 1119 (1985); *Shoemaker v. State,* 228 Md. 462, 466, 180 A.2d 682 (1962). The precondition to the admission of these type statements is that the victim be a witness and the " 'only time requirement is that the complaint have been made without a delay which is unexplained or is inconsistent with the occurrence of the offense, *in general a less demanding time aspect than with the typical excited utterance exception.' "* *Cole v. State,* 83 Md.App. 279, 288, 574 A.2d 326 (1990) (quoting McCormick § 297 at 859) (footnotes omitted in original) (emphasis added).

In sum, the sister's testimony was properly admitted as either a excited utterance or as a timely complaint of a sexual offense.

### IV. Potential Bias of Victim

It is well-settled that extrinsic evidence of relevant matters affecting the interest, bias, hostility, or motives of a witness is admissible, if relevant, in order to impeach the witness on those grounds. *See e.g. Biggs v. State,* 56 Md.App. 638, 645–46, 468 A.2d 669, 672 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984). It is within the sound discretion of the trial court to decide whether to admit such testimony; thus, in order to reverse, we must find an abuse

of discretion. *Rowe v. State,* 62 Md.App. 486, 495–96, 490 A.2d 278, 283, *cert. denied,* 303 Md. 684, 496 A.2d 683 (1985). Appellant asserts that the circuit court twice abused its discretion in refusing to admit evidence of bias, contending that a witness' bias is *always* relevant. *See Biggs,* 56 Md.App. at 645–46, 468 A.2d at 672.

The first alleged error involved appellant's proffer that his wife would testify that the victim had told her, sometime *after* the 1988 occurrence, that the victim was not getting enough attention. This testimony, appellant contends, would have shown motivation for the victim to lie about the abuse in order to get greater attention from her mother. To be relevant, the proffered evidence itself must be relevant to the alleged bias. *Rowe,* 62 Md.App. at 495, 490 A.2d at 282. Therefore, appellant would have to show that the victim was biased against the appellant *at the time* she first made the supposedly false accusations. *See Biggs,* 56 Md.App. at 647, 468 A.2d at 673. The trial court was well within its discretion when it found that, because the alleged conversation occurred after the victim's initial report, it was irrelevant and so inadmissible.

The second alleged error involved the testimony of appellant's daughter that she often babysat for the victim and that the victim "never acted like a normal child." Appellant contends that the lower court erred in not permitting defense counsel to seek elaboration on this description. A court is not required to permit testimony which attacks a witness' character while in no way relating to any alleged bias. Rather it must "distinguish an attack upon a witness' general credit (evidence of specific bad acts, inadmissible) from an attack upon a witness' credit in the particular case (evidence of an interest in the litigation or bias against a party, admissible)." *Id.* at 646, 468 A.2d at 673, *quoting,* 3A Wigmore, *Evidence* § 943 (Chadbourn rev. 1970). Testimony stating how the victim was not "normal" would not relate to potential bias against the appellant, but rather would serve as a direct attack on the victim's character.

The trial court properly disallowed this testimony. *See Biggs,* 56 Md.App. at 646, 468 A.2d at 673 (trial court must guard against witness being diminished in eyes of jury simply by showing that he is "bad").

JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.