726 A.2d 872

**Larry DAVIS**

v.

**STATE of Maryland.**

**No. 691, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 5, 1999.

714

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, and Jason F. Trumpbour, Staff Atty., on the brief), Baltimore, for appellee.

Argued before SALMON, THIEME, and JAMES S. GETTY (Ret'd, specially Assigned), JJ.

JAMES S. GETTY, Judge.

Following a jury trial in the Circuit Court for Baltimore City, Larry Davis, the appellant herein, was convicted of second degree assault and sentenced to five years imprisonment. He was acquitted on charges of rape and kidnapping. The basis of his appeal is the admission into evidence of hearsay testimony from two State's witnesses.

Appellant maintained that he had consensual intercourse with the complainant.[1] Officer Robert Neuens, a Baltimore City policeman, testified that he responded to an incident at 2860 West Mulberry Street at 9:00 p.m. on September 6, 1997. In an alley behind the house, Officer Neuens observed another officer standing over a man and a woman who were partially disrobed. The man was on top of the woman until removed by the officers.

Officer Neuens testified that the victim was hysterical and "it took me 10–15 minutes to calm her down." She then gave Officer Neuens the following account of what occurred:

> She said they were across the street ... at the Merit gas station when the gentleman came up and said he knew her, and if she wanted to make a hundred dollars and have some cocaine.

---

1. Prior to trial, the complainant died from causes unrelated to this case.

And she stated she did not know him and told [him] to leave [her] alone—leave her alone.

She stated at which time he led her forcefully . . . into the alley. . . . She stated that he hit her and kicked at her. . . . He removed his clothes and penetrated her vagina with his penis.

Appellant's contention was that Officer Neuens's testimony was hearsay, and that it was not admissible as an excited utterance exception to the hearsay rule, because the victim had calmed down before she told the officer what happened.

■ Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Md. Rule 5–801(c). *Accord State v. Harrell,* 348 Md. 69, 76, 702 A.2d 723 (1997). A statement made under such circumstances that the exciting influence of the occurrence produced a spontaneous and instinctive reaction on the part of the declarant who is still emotionally engulfed by the event is, however, admissible, within the trial court's discretion. *See Harmony v. State,* 88 Md.App. 306, 319, 594 A.2d 1182 (1991).

■ The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, thereby reducing the likelihood of fabrication. *Harrell, supra,* at 77, 702 A.2d 723. One would be hard pressed to envision a more startling event than being dragged into an alley, thrown to the ground, and assaulted by an unknown assailant. Officer Neuens testified that the victim was "calmed down" to where she could answer his questions, but that she was still emotionally agitated by the events she had experienced a short time before the police arrived. Nothing more is required to establish an excited utterance. Maryland courts have accepted as excited utterances statements made several hours after the event. *Harmony,* 88 Md.App. at 319, 594 A.2d 1182. Time alone is not the sole criterion. The emotional state of the victim at the time of her response governs admissibility. In this case, the time from the star-

tling event to the recitation by the victim was a scant fifteen minutes.

Appellant's second issue is equally lacking in merit. He alleges that the testimony of Rev. Cranston Brooks should have been withheld because he could not identify the individuals whose statements he overheard. Rev. Brooks said he heard the following statements coming from the alley behind his church:

> A female voice saying "don't do that, please don't do that, don't hurt me," followed by a male voice saying "shut up, shut up," accompanied by profanity.

He observed appellant and the victim in the alley several minutes later when the police arrived.

The trial court admitted the testimony under Md. Rule 5–803(b)(3) or 5–804(b)(5); appellant contends it was hearsay. Rule 5–803(b)(3) relates to the "then existing mental, emotional, or physical condition of the declarant's then existing state of mind." Rule 5–804(b)(5) permits reliable circumstantial evidence where the declarant is unavailable as a witness.

The State cites *Carbo v. United States*, 314 F.2d 718 743–44 (9th Cir.1963),[2] as authority for admitting into evidence the statements of the persons whose identity could not be established. Although we agree that the holding in *Carbo* is applicable herein, we disagree with the State's assertion that no Maryland cases have addressed the issue of whether the declarant needs to be clearly identified in order for his statement to qualify as admissible hearsay under the state of mind exception.

In *Hall v. State*, 5 Md.App. 599, 609, 249 A.2d 217 (1969), an inmate at the Maryland House of Correction had been sexually assaulted during a prison riot. The victim was rendered unconscious as a result of being struck on his head with an

---

2. In *Carbo*, a boxing promoter received an anonymous telephone call warning him to stay out of Hollywood. The Court held that if identity of the caller could not be established from other circumstances, admission of the testimony was proper.

unidentified object. When he became conscious, he was lying on his stomach on a bed with a man on his back who was assaulting him sexually. The cell area was dark and the victim could not see who was present, but he heard one of the persons present say, "Who is on him now?" Another voice answered, "Billy Hall," whereupon the person committing the assault yelled to the others to quit hollering his name, and told the victim he had better forget his assailant's name.

The victim testified at trial that when he heard Hall's voice he recognized it, because he had argued with Hall two weeks prior to the assault and "[h]e's got a way of talking . . . and I knew that was his voice." A correctional officer testified that after the riot Hall and several other inmates were being held for medical examination. Hall was directed to look over the piles of clothing in the room and told to get dressed. He selected his clothing and dressed, but he was then instructed to get undressed and his clothing was sent to the Federal Bureau of Investigation for examination. The laboratory analysis showed blood stains on the trousers but not on the shorts, and seminal stains on both the trousers and the undershorts.[3]

■ In a thorough opinion by Judge Charles Awdry Thompson, this Court, quoting 1 Wharton *Criminal Evidence* sec. 279 (12th Edition), stated:

When strictly defined, *res gestae* refers to those exclamations and statements made by either the participants, victims, or spectators to a crime immediately before, during, or immediately after the commission of the crime when the circumstances are such that the statements were made as a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and to fabricate a false statement.

Thus, "[u]tterances serving to identify are admissible as every other circumstance of identification, because the hearsay rule is not applicable." *See* 6 Wigmore, *Evidence,* sec. 1791.

---

**3.** This case occurred thirty-two years ago. With the sophisticated DNA testing presently available, proof of appellant's guilt could be more convincingly established now than was possible in 1967.

This Court concluded in *Hall* that if the only evidence of Hall's participation in the crime was that his name was called out by one of the criminals the evidence would be insufficient to convict. The voice identification coupled with the clothing with blood and seminal stains worn by Hall provided the "other circumstances" necessary to convict.

*Hall* is dispositive of the case *sub judice.* Reverend Brooks's testimony was admissible as part of the *res gestae.* The trial court correctly admitted his testimony. Shortly after hearing the male and female voices in the alley, Reverend Brooks saw both appellant and the victim in the same area where he had heard the voices. From that testimony, a jury could reasonably infer that the voices he heard were those of appellant and the victim.

Thus, the voice identification was admissible due to the reliability of the spontaneous utterances. That evidence and the presence of the appellant and his victim at the scene were sufficient to convict appellant of assault.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**