809 A.2d 1

**Ricky James MALEE**

v.

**STATE of Maryland.**

No. 1742, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Sept. 27, 2002.

Geraldine K. Sweeney, Assistant Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, Scott L. Rolle, State's Attorney for Frederick County, Frederick, on the brief), for appellee.

Submitted before MURPHY, C.J., CHARLES E. MOYLAN, JR. (retired, specially assigned) RAYMOND G. THIEME, JR. (retired, specially assigned), JJ.

MOYLAN, Judge.

The appellant, Ricky James Malee, was convicted by a Frederick County jury, presided over by Judge John H. Tisdale, of twenty counts charging a second degree sexual offense, ten counts charging a third degree sexual offense, and one count charging child abuse. With most of the sentences being consecutive to the others, the appellant was sentenced to serve a grand total of 450 years. On this appeal, he raises the two contentions

1. that the indictment did not charge with sufficient specificity and the evidence did not establish guilt with sufficient specificity, and

2. that the sentence of 450 years was "excessive" under the Eighth Amendment.

We shall examine separately the distinct subcontentions of 1) the specificity of the pleading and 2) the legal sufficiency of the evidence to support the convictions. They are distinct issues. For our analysis of the pleading issue, moreover, we shall assume the legal sufficiency of the evidence to prove the crimes charged.

## The Specificity of the Pleading

During the six-month period covered by the charges, Hilda Smith; her seven-year-old son, Nicholas; and her three-year-old son, Michael, were living at the Lincoln Apartments in Frederick. The appellant was Hilda Smith's live-in boyfriend on a "nightly" or "every other nightly" basis.

The appellant was convicted on 31 separate charges. One of those was for the continuing act of child abuse. It poses no problem in terms of the specificity of the pleading.

The other 30 convictions fall into two large groups. Twenty of the convictions were for various sexual offenses in the second degree. Ten of the convictions were for various sexual offenses in the third degree. All 20 of the second-degree sexual offenses and all 10 of the third-degree sexual offenses were alleged to have occurred at some time during the six-month period of January 1, 1996 through June 30, 1996.

## Why Thirty Charges?

## To Avoid Duplicity

Under the teaching of *Cooksey v. State*, 359 Md. 1, 752 A.2d 606 (2000), the State abandoned any thought of aggregating or consolidating the 30 charges into two charges of continuing offenses, one for all of the second-degree sexual offenses and one for all of the third-degree offenses. Indeed, fearful that the initial indictment in this case may have been duplicitous under *Cooksey*, the State *nolle prossed* the original charges and, on January 19, 2001, filed a new indictment in order to be in full compliance with the *Cooksey* requirements.

In *Cooksey*, the State erroneously had done what the State initially did in this case. In one count in *Cooksey*, the State

had charged the defendant with "a continuing course of conduct" over a one-year period, in which he committed the "sexual act" of cunnilingus with a child. In response to a demand for particulars, the State alleged that the "sexual act" of cunnilingus had occurred "up to fifteen times" during the one-year period. A second count charged a "continuing course of conduct" involving a third-degree sexual offense. The particulars alleged that the "sexual contact" charged in that count occurred "up to fifteen times" during the year-long period.

The opinion of Judge Wilner, 359 Md. at 22–23, 752 A.2d 606, stated emphatically that each separate "sexual act" under § 464A and each separate "sexual contact" under § 464B had to be charged separately.

There is no rational way to treat a second degree sexual offense, as defined in § 464A, or a third degree sexual offense, as defined in § 464B, as a continuing offense. *Section 464A defines a second degree sexual offense as engaging in "a sexual act"* with another person under any of the three circumstances stated in the section. *Section 464B defines a third degree sexual offense as engaging* either *in "sexual contact"* under the circumstances stated in the section or "a sexual act" or vaginal intercourse with a person 14 or 15 if the perpetrator is at least 21. "Sexual contact" is defined in § 461(f) as "the intentional touching" of the victim's anal or genital areas or other intimate parts for certain purposes. *Those offenses are committed when the proscribed act occurs. If they are committed on more than one occasion,* other than as part of an ongoing single incident, *they cannot be regarded as having been committed but once.* We thus aline ourselves with the Rhode Island, New Hampshire, and New York courts and hold that a single count that charges multiple incidents of those offenses, committed other than in the course of a single criminal episode of relatively brief temporal duration, cannot be sustained as non-duplicitous on the theory of a

continuing offense. Counts 1 and 2 of the indictment were duplicitous.

(Emphasis supplied).

Compliance with *Cooksey* accounts for the fact that there were 30 separate charges. Had the State alleged or sought to prove 1) various different types of "sexual act" under a single second-degree sexual offense charge or 2) various different types of "sexual contact" under a single third-degree sexual offense charge, that would have been duplicitous. Had the State alleged or sought to prove multiple instances of a single type of "sexual act" or multiple instances of a single type of "sexual contact" in a single charge, that also would have been duplicitous. The number of the offenses charged in this case is not a problem. It is, indeed, the solution to a problem.

### Specificity as to the Type of Offense

■ All of the charges spelled out the particular sexual offense alleged with complete specificity. The crime of a second-degree sexual offense, Art. 27, § 464A, covers a number of different "sexual acts." Of the 20 counts charging a sexual offense in the second degree, six charged the appellant with anal intercourse upon Nicholas, four charged him with performing fellatio on Nicholas, four charged him with having Nicholas perform fellatio on him, one charged him with inserting a foreign object into Nicholas's anus, three charged him with causing Nicholas to have anal intercourse with Michael, and two charged him with causing Nicholas to perform fellatio on Michael.

■ The crime of a third-degree sexual offense, § 464B, covers a wide range of "sexual contact." Of the ten counts charging the appellant with a sexual offense in the third degree, two counts charged him with touching Nicholas's penis, four counts charged him with causing Nicholas to touch appellant's penis, two counts charged him with causing Nicholas to touch Michael's penis, and two counts charged him with causing Michael to touch Nicholas's penis. In terms of spell-

ing out the specific type of "sexual act" or "sexual contact" being charged, we see no problem with any of the 30 counts.

The appellant's chagrin is not at multiplying the second-degree sexual offense by the number of types of "sexual act" or multiplying the third-degree sexual offense by the number of types of "sexual contact." It is at the further multiplication by the number of instances of each particular type of forbidden "act" or "contact." The appellant was charged with six different types of "sexual act" under the second-degree sexual offense charges, broken down into respective instances of 7, 4, 4, 1, 2, and 2. The appellant was charged with four different types of "sexual contact" under the third-degree sexual offense charges, broken down into respective instances of 2, 4, 2, and 2. By virtue of that further multiplication, 6 became 20 and 4 became 10.

### Specificity As to the Dates of the Offenses

The appellant's biggest problem with that further multiplication is the alleged non-specificity with respect to the dating of the various offenses. For analytic purposes, we shall take the largest sub-group of charges-the six counts charging the appellant with having committed anal intercourse on Nicholas-and consider the dating problem with respect to that group of charges. By parity of reasoning, our analysis with respect to that group of charges will apply to the dating problem with respect to all 30 charges.

### Would the Inclusive Date Be Sufficient

### With Respect to a Single Offense?

As the appellant points out, all six counts charging the appellant with having performed anal intercourse with Nicholas are verbatim clones of each other, with not so much as the variance of a comma. At first blush, that seems intimidating. On closer analysis, however, it is not at all surprising.

What is permitted or not permitted with respect to the dating of any one of the charges will similarly be permitted or not permitted with respect to the dating of the other five

charges as well. Whether within a given and adequately alleged time period, an offense occurred once or twice or ten times is a matter of proof and not of pleading. Our initial analysis, therefore, will be of whether the time of the offense was alleged with sufficient specificity with respect to a single charge of having committed anal intercourse.

Our conclusion is that it was. In *Bonds v. State*, 51 Md.App. 102, 442 A.2d 572 (1982), the defendant was charged with committing various second and third-degree sexual offenses on an eleven-year-old girl "during the period July 1, 1979 through March 10, 1980." Judge Couch wrote for this Court in pointing out that, particularly with respect to offenses on minors, it is sometimes impossible to determine the time of the offense with specificity.

We recognize there are many times when it is impossible for the State to determine the exact date and time that any crime was committed. Therefore, *sometimes specificity as to the exact time and date of the crime alleged is impossible to establish.* To establish a rule that would allow a criminal defendant to demand such specificity by raising an alibi defense would thwart justice and, in our view, is not required by either the Maryland or United States Constitutions.

51 Md.App. at 107, 442 A.2d 572 (emphasis supplied). In upholding the adequacy of the indictment before the Court, he further stated:

Neither the indictment nor the bill of particulars limited the accusation to any particular date. *There is no Maryland case law which requires,* and the applicable statute does not require, *that in such a case as this the State must plead and prove that the offense occurred on a specific date at a specific time. We refuse to impose any such requirement.*

51 Md.App. at 106–07, 442 A.2d 572 (emphasis supplied).

In *Harmony v. State*, 88 Md.App. 306, 594 A.2d 1182 (1991), the defendant, charged with the abuse of a minor child from "1980 through July of 1988," moved to dismiss the criminal

information against him for vagueness. In rejecting that challenge, Judge Motz wrote for this Court:

> [I]n the context of a sex abuse case concerning a minor, when time is not an essential element of the offense, general allegations as to time are constitutionally sufficient if the actual date of the offense is unknown. The Court [in *Mulkey* ] explained that *the "ability of a child to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory."* Moreover, where the offense is of a continuing nature, it may simply be impossible for the State to provide specific dates in its charging document.

88 Md.App. at 313, 594 A.2d 1182 (emphasis supplied). Our conclusion was sure:

> Accordingly, we conclude that the information here, stating that the offenses occurred from 1980 to 1988, is constitutionally valid under the Maryland Declaration of Rights. As in *Mulkey*, the charges here involved multiple sexual abuses of a continuing nature against a child-victim who was unable to specify exact dates or times of the various acts.

88 Md.App. at 313–14, 594 A.2d 1182. See also *Cook v. State,* 100 Md.App. 616, 629–31, 642 A.2d 290 (1994), *reversed on other grounds,* 338 Md. 598, 659 A.2d 1313 (1995).

### The Latitude In Dating a Single Offense

### Extends to the Dating of Multiple Offenses

Thus, if the proof were that a single act of anal intercourse had occurred between "January 1, 1996 through June 30, 1996," the allegation as to the time of the offense would be adequate. If the proof further established that anal intercourse had occurred twice during that same time period, under *Cooksey v. State* two separate counts would be required. The allegation as to the time period within which the second offense occurred would, of necessity, be precisely the same as in the case of the first such offense. If within that same embracing time period, the proof were to cause us to multiply the offense by six rather than by two, the allegations as to the

time period within which the offenses occurred would remain identical. The outer limits of the time period are the same whether within that time period the offense occurred once or twice or fifty times. The multiplier is simply a function of the proof and does not alter the required specificity of the dating in the indictment.

In *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989), the defendant was convicted of *12 counts* of third-degree sexual offense. The 12 offenses were charged as having occurred over the course of three consecutive summers. Four counts were charged as having occurred "on or about June 1, 1982 through September 6, 1982;" four counts as having occurred "June 1, 1983 through September 5, 1983;" and four other counts as having occurred "June 1, 1984 through September 3, 1984." In overruling the Court of Special Appeals and holding that the dating of the offenses was adequately specific, the Court of Appeals recognized the special problem of pinpointing a date in cases of offenses against children of tender years.

> We recognize the unique problems involved in a child or sex abuse case where the victim is of tender years. *The ability of a child to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory.*

316 Md. at 482, 560 A.2d 24 (emphasis supplied). See also *Carter v. State*, 35 Md.App. 224, 228, 370 A.2d 183 (1977) (three credit card offenses "between August 1, 1974 and October 27, 1974"); *Rosenberg v. State*, 54 Md.App. 673, 684, 460 A.2d 617 (1983) (several prostitution type crimes "between May 2, 1981 and May 18, 1981").

Judge Blackwell's opinion in *State v. Mulkey* collected the caselaw around the country. See *State v. Lakin*, 128 N.H. 639, 517 A.2d 846 (1986) (the indictment alleged that the defendant performed the acts between May 1982 and February 1984); *Jackson v. United States*, 503 A.2d 1225 (D.C.App. 1986) (seventeen counts of sodomy in four different time frames within a period of eighteen months); *Commonwealth v. McClucas*, 357 Pa.Super. 449, 516 A.2d 68 (1986) (March 1979

through April 1984); *State v. Madden,* 15 Ohio App.3d 130, 472 N.E.2d 1126 (1984) (rape of a child during a seven month period); *State v. Allen,* 622 S.W.2d 275 (Mo.App.1981) (sexual abuse of a child between January 1, 1979 and July 1, 1979).

The conclusion of the Court of Appeals was clear:

We conclude the general form indictment in the present case stating that the offenses occurred over three consecutive summers was constitutionally valid.

316 Md. at 487, 560 A.2d 24.

## Double Jeopardy

The appellant complains that there could be future double jeopardy problems, but that would be true whether six acts of anal intercourse had been charged or only one. The double jeopardy fear, moreover, would appear to be allayed by *State v. Mulkey,* 316 Md. at 488, 560 A.2d 24:

The State's indictment in the present case results in a bar to subsequent prosecutions for offenses which may have occurred during the stated time periods.

## Compromising the Alibi Defense:

### A Calculated Policy Decision

■ The appellant's second complaint is that he could be compromised in an effort to assert an alibi defense. That is, indeed, true. That again, however, would be just as true whether the appellant were charged with one count of second-degree sexual offense within that designated time period or with twenty counts. In such circumstances, moreover, the settled policy decision of Maryland law is that the opportunity of asserting an alibi defense must yield to the testimonial latitude extended to the child victim of sexual abuse with respect to establishing the time of the offense. *State v. Mulkey,* 316 Md. at 482, 560 A.2d 24, quoted with approval from *Bonds v. State,* 51 Md.App. at 107, 442 A.2d 572:

[S]ometimes specificity as to exact time and date of the crime alleged is impossible to establish. *To establish a rule that would allow a criminal defendant to demand such*

*specificity by raising an alibi defense would thwart justice* and, in our view, is not required by either the Maryland or United States Constitutions.

(Emphasis supplied). See also *Harmony v. State,* 88 Md.App. at 314, 594 A.2d 1182.

■ With further respect to the alibi defense issue, we note that in this case the appellant's defense was that he never sexually abused either Nicholas or Michael at any time. That defense was in no way time-specific.

## The Failure to Demand a Bill of Particulars

We also note with respect to the present contention with respect to non-specificity that at no time did the appellant request a Bill of Particulars in an effort to seek more specificity. Md. Rule 4–241; *McMorris v. State,* 277 Md. 62, 70 n. 4, 355 A.2d 438 (1976); *Tapscott v. State,* 106 Md.App. 109, 127, 664 A.2d 42 (1995); *Patrick v. State,* 90 Md.App. 475, 504, 601 A.2d 1133 (1992). See also *Harmony v. State,* 88 Md.App. at 315, 594 A.2d 1182.

## The Legal Sufficiency of the Evidence

■ The second subcontention the appellant raises with respect to the lack of specificity is that, because of its non-specificity, the evidence was not legally sufficient to support the convictions. We hold that the evidence was sufficient.

Nicholas, the seven-year-old primary victim, was twelve years old at the time he testified. In terms of establishing the *corpus delicti* of Nicholas's having been subjected to sexual abuse, the physical examination of his anus by Dr. Julia Lajoie and the psychological examination of his behavior by Dr. David Fago both generally supported the occurrence of the acts Nichols described. The testimony of Michael, three years old at the time of the crimes and eight years old at the time of trial, further supported Nicholas's testimony as to both the *corpus delicti* of the crimes and the criminal agency of the appellant.

Purely in terms of the burden of production, however, which is all we are concerned with in assessing the legal sufficiency of the State's case, Nicholas's testimony needed no further support. If believed and given weight, both matters within the exclusive province of the jury, his testimony adequately supported all of the convictions.

Nicholas clearly identified the appellant as the criminal agent. Nicholas's testimonial descriptions of the types of sexual activity engaged in by the appellant adequately established the six varieties of sexual offense in the second degree and the four varieties of sexual offense in the third degree alleged in the indictment. The general time frame of January 1996 through June 1996, alleged in the indictment, was also established. That was the time in which Hilda Smith and her sons, Nicholas and Michael, were living at the Lincoln Apartments in Frederick.

In terms of legal sufficiency, it only remains to examine the proof as to the number of times each separate type of sexual offense occurred. With respect to the six charges of anal intercourse, the evidence permitted a finding that it happened three times when Hilda Smith was present and three times when Hilda Smith was not present. Nicholas testified that the appellant committed fellatio on him "four times" and that he was forced to commit fellatio on the appellant "four times." Although hardly overwhelming in its detail, Nicholas's testimony similarly established the number of times that 1) the appellant placed a foreign object in Nicholas's anus (once), 2) Nicholas was caused to have anal intercourse with Michael (three times), and 3) Nicholas touched the appellant's penis (four times).

The testimony of Nicholas as to 1) being caused to commit fellatio on Michael, 2) having his penis touched by the appellant, 3) being caused to touch Michael's penis, and 4) being caused to have his penis touched by Michael was that each of those types of offense occurred "a few times." Giving the appellant the benefit of the doubt, Judge Tisdale ruled that although "a few" means more than one, he would not permit

the jury to find that "a few" meant more than two. In each case based on testimony of "a few" of such instances, the jury returned guilty verdicts for two of such instances. In terms of minimal evidentiary support, which is all that is required by the burden of production, we hold that such minimal support was present.

### Is 450 Years a "Stiff" Sentence?

■ The appellant finally claims that the appellant's sentence was so "excessive" as to be in violation of the Eighth Amendment's prohibition of "cruel and unusual" punishment. At first blush, what appears to be a sentence of 450 years is, indeed, enough to grab our attention. Under such a sentence, a prisoner sentenced in the first year of her reign by Queen Elizabeth I would, absent good behavior, still have six years to serve.

The appellant seeks legal support for his argument in a single footnote in the recently filed opinion of the Supreme Court in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002):

Thus, we have read the text of the [Eighth] Amendment to prohibit all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive.

—— U.S. at —— n. 7, 122 S.Ct. at 2246 n. 7, 153 L.Ed.2d at 344 n. 7. That is quite a stretch in that the only subject being dealt with by the *Atkins v. Virginia* opinion is the constitutionality of imposing the death sentence on a defendant who is mentally retarded. It leaves unresolved for our purposes the questions of what is "excessive" and what is a "sentence."

The complaint is about a "sentence of 450 years." We have searched the record and can find no "sentence of 450 years." What we do find are 31 separate sentences for 31 separate convictions for 31 separate crimes. Not one of those sentences was in excess of 20 years, a sentence within the legislatively prescribed limits.

The appellant's real complaint is that 30 of the 31 sentences were ordered to be served consecutively. Ironically, for the

31 convictions in this case, the Maryland sentencing guidelines, as the appellant himself concedes, are calculated at "400 to 460 years." The appellant, however, is mounting a federal constitutional challenge. We have only found three Supreme Court opinions, in something other than a death penalty case, involving an Eighth Amendment analysis of the length of a prison sentence: *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). All three involved sentences of life imprisonment without possibility of parole for a single offense. None dealt with the subject of consecutive rather than concurrent sentences for multiple convictions.

In *Kaylor v. State,* 285 Md. 66, 69, 400 A.2d 419 (1979), the Court of Appeals placed an unequivocal seal of approval on the discretionary decision of a sentencing judge to impose consecutive sentences for multiple convictions.

> [I]mposition of sentence in a criminal case is a matter within the discretion of the judge.... *[T]here is nothing improper per se about the imposition of consecutive sentences.* The restraints on a judge's power to impose sentence are, generally, that the sentence not constitute cruel and unusual punishment, that the sentencing judge not be motivated by ill-will, prejudice or other improper considerations and, that the sentence fall within statutory limits. *[I]t is settled law that consecutive sentences do not constitute cruel and unusual punishment where the length of each sentence is within the limits prescribed by statute.* Here the appellants do not challenge the sentencing judges' motivations nor do they contend that the penalties exceed statutory limits. Instead, *the appellants directly attack their sentences by asserting that the sentencing judges were powerless to run the sentences consecutively.*

(Emphasis supplied).

Judge Cole further observed, 285 Md. at 70, 400 A.2d 419:

A court has a power to impose whatever sentence it deems fit as long as it does not offend the constitution and is within statutory limits as to maximum and minimum penalties. *This judicial power includes the determination of whether a sentence will be consecutive or concurrent,* with the same limitations.

*This Court has long adhered to the position that consecutive sentences are a proper exercise of the trial court's discretion.*

(Emphasis supplied).

The *Kaylor* opinion quoted with approval the opinion of Judge McSherry in *Rigor v. State,* 101 Md. 465, 470, 61 A. 631 (1905):

Jurisdiction to inflict cumulative punishment is dependent . . . upon the fact that distinct violations of the law have been committed by one individual whose malefactions merit separate and, therefore, cumulative penalties.

Based on that analysis, the conclusion of the Court of Appeals was sure:

We conclude that *a judge may,* in the exercise of his discretion, *impose consecutive sentences for distinct violations of the law,* thus preventing duly convicted offenders from escaping punishment for the commission of their criminal acts.

285 Md. at 71, 400 A.2d 419 (emphasis supplied). See also *Frost v. State,* 336 Md. 125, 143 n. 8, 647 A.2d 106 (1994); *Timney v. State,* 80 Md.App. 356, 370, 563 A.2d 1121 (1989).

We see no problem with the consecutive nature of a series of 20 year sentences in this case.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**