J-A19033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| 1720 SANSOM STREET, LP, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MATTHEW CORRELL | : | No. 1209 EDA 2016 |

Appeal from the Judgment June 3, 2016
in the Court of Common Pleas of Philadelphia County,
Civil Division, No(s): 140500361

| | | |
|---|---|---|
| 1720 SANSOM STREET, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MATTHEW CORRELL, | : | |
| | : | |
| Appellant | : | No. 1210 EDA 2016 |

Appeal from the Judgment June 3, 2016
in the Court of Common Pleas of Philadelphia County,
Civil Division, No(s): 00361

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 12, 2017**

1720 Sansom Street, LP ("Plaintiff"), appeals, and Matthew Correll ("Correll") cross-appeals, from the judgment that ultimately determined the ownership of, and boundary line between, their respective properties. We affirm.

According to Plaintiff's Complaint, by a deed recorded on December 29, 2011, Susannah H. Hall conveyed to Correll property located at 1715

Moravian Street, Philadelphia, Pennsylvania ("the Correll Property"), for the sum of $252,000.00.

By a deed recorded on February 22, 2013, Yuko Omori ("Omori") conveyed, to Plaintiff,[1] adjoining properties located at 1717 Moravian Street and 1720 Sansom Street in Philadelphia ("Plaintiff's Property"), for the sum of $1.00.

In April 2012, Plaintiff's Property[2] was substantially damaged in a fire. After the resolution of unrelated insurance issues, Plaintiff contracted with Matthew DiPasquale, Inc. ("DiPasquale"), to commence reconstruction of Plaintiff's Property. During this reconstruction, Plaintiff discovered that a third-floor powder room on the Correll Property, with its plumbing and fixtures located on the second floor (collectively, "the Improvements"), was partially located on Plaintiff's Property.[3] A survey conducted by Plaintiff's architect confirmed that the Improvements encroached on Plaintiff's Property by approximately 18 inches. A deck on the Correll Property ("the Deck") also was found to encroach on Plaintiff's Property.

---

[1] Omori is a limited partner of Plaintiff.

[2] Although Omori owned the property at the time, we will refer to her property as "Plaintiff's Property" for clarity.

[3] A subsequent inspection by Philadelphia's Department of Licenses and Inspections determined that the Improvements were built without the issuance of a building permit.

On May 6, 2014, Plaintiff initiated the instant action by filing a Petition for a preliminary injunction and a Complaint for equitable relief based upon Correll's alleged trespass upon Plaintiff's Property. Correll counterclaimed, seeking to quiet title to the Improvements by application of the consentable line doctrine, as the Improvements had been in existence for over 21 years. Correll additionally sought to quiet title to the Deck.

On February 12, 2016, after a bench trial, the trial court determined that Correll is the owner of the Deck and the Improvements. The trial court directed that Correll pay the costs of installing a permanent firewall between the Correll Property and Plaintiff's Property.

Plaintiff filed a post-trial Motion for judgment *n.o.v.*, challenging the trial court's application of the consentable line doctrine and its denial of relief for Correll's trespass onto Plaintiff's Property. Correll filed a post-trial Motion to clarify and amend the trial court's February 12, 2016 Order. Specifically, Correll sought an amendment of the Order to reflect that the plumbing for the Improvements, located on the second floor of Plaintiff's Property, should be awarded to him, and a clarification regarding the location of the proposed firewall. Correll further challenged the requirement that he pay the costs associated with installation of a firewall between Plaintiff's Property and the Correll Property. Finally, Correll asserted that Plaintiff already had constructed a temporary firewall, and it was unclear as to what Correll was to do with that firewall.

On March 16, 2016, the trial court entered an Order amending its February 12, 2016 Order, and declaring Correll to be the legal owner of "the [D]eck and the third floor [Improvements], including the plumbing servicing it on the second floor of [the Correll Property] and extending into [Plaintiff's Property.]" Trial Court Order, 3/16/16, at ¶ 6. The trial court's Order further clarified that Correll was to construct the firewall between Plaintiff's Property and the Correll Property, "on the property line which reflects the ownership as mandated by this Order." *Id.* at ¶ 8. The trial court directed the parties to submit proposed reformed deeds for all of the affected properties, but stayed that portion of the Order pending appeal. Thereafter, Plaintiff filed a Notice of Appeal, after which Correll filed a cross-appeal of the trial court's March 16, 2016 Order. The trial court subsequently entered Judgment.[4]

In its appeal, Plaintiff presents the following claims for our review:

1. Did the trial court abuse its discretion and exceed its equitable power when it applied the doctrine of *de minimis non curat lex* to determine that [Correll] is the owner of the [I]mprovements?

[2]. Did the trial court abuse its discretion when it refused to consider the post[-]trial findings of Code enforcement violations found by the municipal court?

[3]. Did the trial court abuse its discretion and exceed its equitable power when it barred Plaintiff's claims for trespass of

---

[4] "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof." *Commonwealth v. Cooper*, 27 A.3d 994, 1008 (Pa. 2011) (citation omitted).

the [Improvements] pursuant to the application of the doctrine of laches?

[4]. Did the trial court abuse its discretion and commit an error of law when it denied Plaintiff's request for a permanent injunction?

[5]. Did the trial court abuse its discretion and commit an error of law when it denied Plaintiff's request for a directed verdict?

Brief for Appellant at 6-7 (some capitalization omitted, numbering changed).

Before addressing Plaintiff's claims, we observe that, in its Statement of Questions Involved, Plaintiff challenges the trial court's application of the *de minimis* doctrine. ***Id.*** at 6. In the Argument section of its brief, however, Plaintiff generally argues that the trial court improperly declared Correll to be the owner of the property encompassing the Improvements. ***Id.*** at 14. Under this heading, Plaintiff argues that the trial court improperly (a) determined that Correll established a consentable boundary line; (b) determined that Correll failed to establish the requisite 21 years of adverse use; and (c) supplanted rules of law with equitable principles. ***See id.*** at 14, 25, 28. In subsection (c), Plaintiff addresses the claim set forth in his Statement of Questions Involved. Although we could deemed waived any issues not set forth in Plaintiff's Statement of Questions Involved, we will address the claims set forth in the Argument section of Plaintiff's brief. Counsel, however, is reminded of Rule of Appellate Procedure 2116(a). ***See*** Pa.R.A.P. 2116(a) (directing that "[n]o question will be considered unless it

is stated in the statement of questions involved or is fairly suggested thereby.")

In its first claim, Plaintiff challenges the trial court's determination that Correll had established ownership of the Improvements and the Deck by application of the consentable line doctrine. Brief for Appellant at 14. Plaintiff contends that neither Plaintiff nor Correll recognized a new boundary line, 18 inches away from the deeded property line. *Id.* at 16. Plaintiff argues that the positioning of interior walls, within one's own property, is not equivalent to recognizing a boundary line. *Id.* at 17. Plaintiff directs our attention to evidence that Plaintiff and Correll were not aware that the Improvements were placed over the boundary line of Plaintiff's Property. *Id.* at 16. Plaintiff also directs our attention to testimony of owners in the parties' respective chains of title that they were unaware of any encroachment by the Improvements onto Plaintiff's Property. *See id.* at 18, 20 (wherein Plaintiff points out (1) Correll's testimony that he was unaware of whether the Improvements matched the description set forth in the Movarian Street Deed, (2) Hall's testimony that she had no knowledge that the Improvements had been constructed and installed beyond the Correll Property's boundary line, and (3) Dr. Peter Hunt's ("Dr. Hunt") testimony that he had no knowledge of any alterations by Correll after the time of his transfer of the property to Hall).

We keep in mind the applicable standard of review:

In equity matters, appellate review is based on a determination by the appellate court of such questions as whether (1) sufficient evidence supports the findings of the judge; (2) the factual inferences and legal conclusions based on those findings are correct; and (3) there has been an abuse of discretion or an error of law. Generally, in an appeal from a trial court sitting in equity, the standard of review is rigorous. The function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether a judicial mind, on due consideration of all of the evidence, as a whole, could reasonably have reached the conclusion of that tribunal.

*Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 557-58 (Pa. Super. 2004) (citation and internal quotation marks omitted). Moreover, we are "bound by the trial court's determination concerning the credibility of witnesses and weight to be accorded the evidence." *Marchetti v. Karpowick*, 667 A.2d 724, 726 (Pa. Super. 1995) (citation omitted).

"Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other." *Moore v. Moore*, 921 A.2d 1, 4 (Pa. Super. 2007).

"Acquiescence," in the context of a dispute over real property, denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user. A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own[;] and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years…. [W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title

- 7 -

to that land behind the line, some of which may not have been theirs under their deeds.

*Id.* at 5 (citations and internal quotation marks omitted). The parties need not have specifically consented to the location of the line. *Sorg v. Cunningham*, 687 A.2d 846, 849 (Pa. Super. 1997). "It must nevertheless appear that for the requisite twenty-one years[,] a line was recognized and acquiesced in as a boundary by adjoining landowners." *Plauchak v. Boling*, 653 A.2d 671, 675 (Pa. Super. 1995) (citation and internal quotation marks omitted). Proof of passage of the statutory period may be shown by tacking the current claimant's tenancy to that of his predecessor. *Moore*, 921 A.2d at 5.

We have reviewed the parties' briefs and the certified record. We agree with the sound reasoning of the trial court, as set forth in its Opinion, regarding this claim. *See* Trial Court Opinion, 3/21/17, at 4-5. We therefore affirm on the basis of the trial court's Opinion with regard to Plaintiff's first claim of error, *see id.*, with the following addendum.

Plaintiff contends that a consentable line has not been recognized above a properties' surface. Brief for Appellant at 21. However, a property owner's "interest in exclusive possession is not limited to the surfaces; it extends above and below." *Jones v. Wagner*, 624 A.2d 166, 169 (Pa. Super. 1993) (citations omitted). As stated above, the consentable line doctrine is a rule of repose that may be used to determine a property's boundary line(s). *Moore,* 921 A.2d at 4. We can find no case law limiting

application of the doctrine to surface rights only. Consequently, we cannot conclude that the trial court erred in finding a consentable line above the surface of the property.

Plaintiff also claims that Correll failed to satisfy the 21-year statutory requirement for application of the consentable line doctrine. Brief for Appellant at 25. At trial, Omori testified that she and her husband acquired Plaintiff's Property on October 27, 1994.[5] N.T., 10/1/15, at 117. Omori explained that she subsequently deeded Plaintiff's Property to Plaintiff, of which she is a limited partner. *Id.* at 118. Omori stated that she never gave anyone permission to use a portion of Plaintiff's Property, while she owned it. *Id.* at 135. Omori explained that she used the third floor of her property, up to the wall dividing Plaintiff's Property from the Correll Property, from 1997 to 2006. *Id.* at 148. During her ownership, Omori believed that she owned up to the wall on the east and west side of Plaintiff's Property. *Id.* at 165.

James Campbell ("Campbell"), Plaintiff's expert architect, testified that in February or March 2013, he was asked by Omori to "come over to take a look at a fire-damaged building" on Plaintiff's Property. N.T., 10/2/15, at 27. Campbell stated that as part of that work, he engaged surveyor David Landrecht ("Landrecht") to survey the property. *Id.* at 35. Landrecht testified that he surveyed Plaintiff's Property on February 6, 2014. N.T.,

---

[5] Omori's husband died on December 14, 1995.

8/30/15, at 65. Landrecht acknowledged a "common wall" between the Correll Property and Plaintiff's Property. *Id.* at 73.

Dr. Hunt, an oral surgeon, testified that he owned the Correll Property from September 4, 1987 to 2004. N.T., 6/17/14, at 20. According to Dr. Hunt, the third-floor bathroom existed at the time he purchased the Correll Property. *Id.* at 12-13. Dr. Hunt further testified that he made no changes to the bathroom during his period of ownership. *Id.* at 14, 17. In addition, Dr. Hunt testified that the third-floor bathroom existed at the time he sold the Correll Property to Susannah Hall ("Hall"), Correll's predecessor in title. *Id.* at 15. Dr. Hunt confirmed that the Correll Property included the Deck, at the time of his purchase, and on the date that he conveyed the Correll Property to Hall. *Id.* at 15-16. Dr. Hunt testified that he used the bathroom and the Deck during his period of ownership. *Id.* at 17.

Hall confirmed that the Improvements and the Deck existed at the time she purchased the Correll Property. N.T., 10/6/15, at 58. Although Hall renovated the Improvements by installing bathroom tile, she did not move the walls or plumbing, and retained the same sink and toilet. *Id.* at 62. Hall performed some work on the Deck, but did not expand the Deck's size. *Id.* at 63. Hall used the Improvements and Deck during her ownership of the Correll Property. *Id.* at 63-64. Hall sold the Correll Property to Correll on December 9, 2011. *Id.* at 63. During her period of

ownership, Hall considered the Improvements and the Deck to be owned by her. *Id.* at 64, 66.

Suzin Kline ("Kline"), a real estate agent, testified that she represented the seller of the Correll Property during the sale to Hall, and from Hall to Correll. *Id.* at 72. According to Kline, the listing for the Correll Property included a reference to the Improvements as a "one-half bath." *Id.* at 74. When Hall purchased the Correll Property, Kline personally observed the Improvements. *Id.* at 76. The listing for the Correll Property also included a reference to the Deck. *Id.* at 77.

Finally, Correll testified as to his belief that, at the time he purchased the Correll Property, "when I walked through with my realtor, I believed [that] all [of] the property within the house, as well as the [D]eck, was considered to be my property." N.T., 10/5/15, at 120. Correll testified to his belief that the other side of the wall of the Improvements was Plaintiff's Property. *Id.* at 148-149. Correll also acknowledged his use of the Improvements and the Deck throughout his ownership of the Correll Property. *Id.* at 151-52.

Thus, the evidence supports the trial court's findings that each party has (1) claimed the land on their respective sides of the Improvements and the Deck as their own; and (2) occupied their respective side of the line for a continuous period of 21 years. *See Moore*, 921 A.2d at 5.

Plaintiff, in his first claim, also argues that Correll failed to satisfy the 21-year statutory period because there was no obvious presence of a boundary line, so as to allow Correll's possession to tack onto that of his predecessors in title. **See** Brief for Appellant at 25, 26-27. Plaintiff contends that there was only a "hidden" boundary line in the air space above an alley. **Id.** at 27.

As our Supreme Court has explained,

"where a boundary line, or corner, is actually located is a question for the trier of fact." **Corbin v. Cowan**, 716 A.2d 614, 617 (Pa. Super. 1998) (resolving dispute regarding location of common boundary line and ownership rights of dirt road) (emphasis added), quoting **Plott v. Cole**, 377 Pa. Super. 585, 547 A.2d 1216, 1219 (Pa. Super. 1988); **see also Plauchak**[,] ... 653 A.2d [at] 675 (noting "location of ... [a] boundary line is a matter for the trier of fact" in action in ejectment and/or to quiet title regarding location of boundary line and ownership of property surrounding boundary line) (emphasis in original)....

**Starling v. Lake Meade Prop. Owners Ass'n**, 162 A.3d 327, 352-53, (Pa. 2017) (emphasis omitted).

The evidence supports the trial court's finding that Correll established the existence of a consentable line for the requisite 21-year period. As set forth above, Omori testified that she believed that Plaintiff owned up to the wall on the east side of Plaintiff's Property. N.T., 10/1/15, at 148, 165. Hall, Dr. Hunt, and Correll each testified that they believed that they owned, and continually used, the Improvements and the Deck throughout their periods of ownership. N.T. (Correll), 10/5/16, at 120; N.T. (Hall), 10/6/15, at 63-64, 66; N.T. (Dr. Hunt), 6/17/14, at 12-13, 15-17. Thus, Correll

established the existence of a consentable line, the location of which was left to the trial court, as finder of fact, to decide. **See Starling**, 162 A.3d at 352-53. Because the evidence supports the findings of the trial court, as fact-finder, and its legal conclusions are sound, we cannot grant Plaintiff relief on this contention. **See Omicron Sys, Inc.**, 860 A.2d at 557-58.

Under his first claim of error, Plaintiff additionally argues that the trial court improperly replaced "rules of law with equitable principles[.]" Brief for Appellant at 28 (capitalization omitted). Plaintiff contends that the trial court's "*sua sponte* application of the *de minimis* doctrine exceeded the trial court's equitable power." **Id.** According to Plaintiff, the doctrine had no place in this litigation, and the trial court improperly used this doctrine "in place of finding that [Correll] had legally established ownership by consentable line." **Id.** at 32. Plaintiff directs our attention to testimony regarding water damage to Plaintiff's Property, purportedly caused by the flashing on the pole attaching the Deck to Plaintiff's Property. **Id.** at 33-34. Plaintiff argues that this damage is not trifling or immaterial. **Id.** at 37.

Our review discloses that, although the trial court found that the encroachment was *de minimis*, the trial court additionally determined that Correll had established a consentable line by recognition and acquiescence. **See** Trial Court Order, 3/16/16, at ¶¶ 3 (finding in favor of Correll as to Count III of Correll's Counterclaim for quiet title based upon the consentable line doctrine), 6 (finding that Correll owns the Improvements and Deck);

*see also* Trial Court Opinion, 3/21/17, at 5-7 (determining that Correll met the required 21-year period of possession for application of the consentable line doctrine). Because we discern no error or abuse of discretion as to this determination, we need not address Plaintiff's challenge to the characterization of the encroachment as *de minimis*. However, even if we were to address this claim, we would affirm on the basis of the trial court's Opinion with regard to this issue. **See** Trial Court Opinion, 3/21/17, at 4-5.

As to Plaintiff's assertion that the trial court improperly "replaced rules of law with equitable principles," **see** Brief for Appellant at 28, we point out that Plaintiff sought equitable relief from the trial court. We cannot conclude that the trial court erred by applying equitable principles to Plaintiff's claim for equitable relief.

In its second claim of error, Plaintiff argues that the trial court improperly applied the doctrine of laches to bar Plaintiff's claim for trespass as to a support post of the Deck. Brief for Appellant at 38. According to Plaintiff, Correll suffered no prejudice caused by Plaintiff's alleged delay. **Id.** at 40.

"The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim that those who sleep on their rights must awaken to the consequence that they have disappeared." **Fulton v. Fulton**, 106 A.3d 127, 131 n.6 (Pa. Super. 2014) (internal quotation marks omitted). "Laches arises when a party's position or rights

are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." *In re Estate of Moskowitz*, 115 A.3d 372, 380 (Pa. Super. 2015) (internal quotation marks and citation omitted). "The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue." *Fulton*, 106 A.3d at 131.

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

*Id.* (citation omitted).

> The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

*Estate of Moskowitz*, 115 A.2d at 380 (quoting *Fulton*, 106 A.3d at 131 (internal citations omitted)).

Here, Correll testified that a critical reason for his purchase of the Correll Property was the Deck. N.T., 10/5/15, 147. According to Correll, "it was a big asset to me to have an outdoor space and eating area since my kitchen is … very small and not suitable for entertainment." *Id.* Correll also testified that he would not have purchased the Correll Property had the Deck

- 15 -

not been included as part of the property. *Id.* Contrary to Plaintiff's claim, Correll presented evidence of prejudice due to the lapse of time.

In its second claim, Plaintiff also argues that the trial court improperly barred Plaintiff's claim for trespass by a water diverter from the Correll Property. Brief for Appellant at 41. Plaintiff asserts that the water diverter violated the Philadelphia Property Maintenance Code, as it resulted in the concentration of water drainage to Plaintiff's Property. *Id.*

In its Opinion, the trial court addressed Plaintiff's claim of trespass based upon the water diverted from the Correll Property. *See* Trial Court Opinion, 3/21/17, at 8-9. We agree with the sound reasoning of the trial court, as expressed in its Opinion, and affirm on this basis as to Plaintiff's contention in this regard. *See id.*

In its third claim of error, Plaintiff argues that the trial court erred by denying its request for a permanent injunction. Brief for Appellant at 44. According to Plaintiff, the trial court's failure to enjoin Correll from maintaining the Deck's post on Plaintiff's Property violates the Philadelphia Property Maintenance Code. *Id.* at 45.

Our review of the record discloses no abuse of discretion or error in the trial court's determination of the parties' respective property rights. The extent to which the Deck complies with or violates the Philadelphia Property Maintenance Code was/is the subject of a municipal court proceeding. Any violations, and potential remedies to correct violations, are properly before

the municipal court for determination. Finally, we agree with the trial court's determination that "[i]t would be improper to import, after the close of evidence and completely out of context, the findings of another court as to another matter." Trial Court Opinion, 3/21/17, at 5 n.4. Consequently, Plaintiff is not entitled to relief on this claim.

In its fourth claim of error, Plaintiff argues that the trial court improperly denied its Motion for a directed verdict. Brief for Appellant at 47. According to Plaintiff, Correll failed to sufficiently describe the land in controversy, such that the trial court could afford Correll the relief sought. *Id.* at 47-48.

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 3/21/17, at 9. We agree with the reasoning of the trial court, and affirm on this basis as to Plaintiff's fourth claim. *See id.*

In its fifth claim, Plaintiff argues that the trial court improperly refused to consider the post-trial findings of the municipal court as to code violations by Correll. Brief for Appellant at 52. Plaintiff contends that this newly discovered evidence was relevant to Correll's "unclean hands." *Id.*

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 3/21/17, at 5 n.4. We agree with the trial court's determination, and affirm on this basis as to Plaintiff's fifth claim. *See id.*

We next address the following claims raised by Correll:

1)    Whether the [trial c]ourt erred in ordering [Correll] to construct and pay the costs of installing a permanent firewall between [Plaintiff's Property and the Correll Property,] when the [trial c]ourt's ruling was against the weight of the evidence insofar as there was no evidence presented at trial that [the Correll Property] was cited for violation of any City of Philadelphia codes regarding the fire separation [between the properties]?

2)    Whether the [trial c]ourt erred in ordering [Correll] to construct and pay the costs of installing a permanent firewall between [Plaintiff's Property and the Correll Property] by failing to consider [that the] existing condition of the properties were such that the City of Philadelphia would even require a firewall to be constructed by [Correll]?

3) Whether the [trial c]ourt erred in ordering [Correll] to construct and pay the costs of installing a permanent firewall between [Plaintiff's Property and the Correll Property,] since it was beyond the scope of relief requested by [Plaintiff] in its Complaint?

4.    Whether the [trial c]ourt erred in its order by failing to specify that [Correll] did not construct the [Improvements] and the plumbing servicing [them] had been in existence for more than forty years?

5.    Whether the [trial c]ourt erred in ordering [Correll] to construct and pay the costs of installing a permanent firewall between [Plaintiff's Property and the Correll Property] when facts at trial established that [Plaintiff], through its agents, removed material from the wall between [Plaintiff's Property and the Correll Property] which could have sufficed as a firewall, and therefore[,] Correll should not be forced to bear the costs of erecting a firewall when any damage to [Plaintiff's Property] was caused by [Plaintiff]?

6. Whether the Court erred by failing to specify in its [O]rder that [Correll] is only required to install and pay the costs of installing a firewall on [Correll's] side of the property line[,] as determined by the [trial court] in its [O]rder of March 16, 2016,

not on [Plaintiff's] side of the property line, if the City of Philadelphia deems it necessary?

Brief for Cross-Appellant at 6-7.

In its Opinion, the trial court succinctly addressed each of these issues, and concluded that they lack merit. **See** Trial Court Opinion, 3/21/17, at 10-12. We agree with the sound reasoning of the trial court, as expressed in its Opinion, and affirm on the basis of the trial court's Opinion with regard to each of Correll's claims. **See id.**

Accordingly, we affirm the Judgment entered by the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2017

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION**

1720 SANSOM STREET, L.P.

v.

MATTHEW CORRELL

: DOCKET NO.: 140500361

: 1209 & 1210 EDA 2016

1720 Sansom Street, L.P. Vs Correll-OPFLD

14050036100134

## OPINION

POWELL, JR. KENNETH J., J.                    **March 21, 2017**

### I.    Facts and Procedural History

This is a case about a "powder room encroachment" – the defendant, Matthew Correll, owns a rowhome at 1715 Moravian Street in Philadelphia, and some portion of a powder room on that property encroaches on the interior wall space of the plaintiff's property, 1717 Moravian Street.[1] The plaintiff acknowledges that it was initially unaware of the encroachment, which does not penetrate the plaintiff's property walls or otherwise intrude into the interior living space that the plaintiff enjoyed prior to the powder room's installation. The plaintiff alleged that the defendant's roof deck and certain plumbing serving the powder room trespassed upon the plaintiff's property as well. The encroachment was approximately eighteen inches in depth over the alleged property line, at its deepest. Prior owners of both properties testified that these conditions predated their ownership of the property, and have been in place for decades.

---

[1] Sansom Street and Moravian Street are both smaller streets in Philadelphia, and Sansom is just north of Moravian. They run parallel to one another, and are separated by approximately six to seven car-lengths.

The parties agreed to forego a jury trial and to proceed with this Court as the finder of fact. On February 12, 2016, this Court entered an order specifying that on count I of the complaint for ejectment for trespass, judgment is entered for the defendant; on count II for preliminary injunction, judgment is entered for the defendant; on count I of counterclaim for action to quiet title, judgment is entered for the defendant; on count II of counterclaim for quiet title, judgment is entered for the defendant; and count III of the counterclaim for injunctive relief is dismissed as moot.

On March 16, 2016, the order was amended as follows: judgment for the defendant/ counterclaim plaintiff as to trespass, permanent injunction, and quiet title as to the powder room and the deck, the claim for injunctive relief is dismissed as moot, and the defendant is ordered to construct and pay the costs of a permanent firewall between the two properties. On April 13, 2016, both sides filed timely notices of appeal.

The defendant and counterclaim plaintiff brings six alleged points of error, all relating to this Court's order that he construct and pay for a firewall between the properties, as described in greater detail *infra*. The plaintiff and counterclaim defendant brings a broader range of alleged claims of error:[2]

1. Whether the trial court erred in finding that Appellee is the legal owner of the third floor powder room and the plumbing servicing it on the second floor, and the roof deck, to the extent that they extend over the deeded property line between 1715 Moravian Street and 1717 Moravian Street?
    a. Whether the trial court considered that Appellee was found liable for code enforcement violations pertaining to the roof deck and powder room encroachment post trial in Philadelphia Municipal Court on February 18, 2016, as raised in Appellant's Post Trial Motion?

---

[2] For clarity's sake, the opinion will refer to the plaintiff and counterclaim defendant as the plaintiff, and the defendant and counterclaim plaintiff as the defendant.

2

2. Whether the trial court erred in permitting the Appellee to tack his predecessors' periods of possession to comply with the Doctrine of Consentable Lines' required 21 year period of possession?
3. Whether the trial court erred in failing to determine that Appellee's deck post that is situated on Appellant's roof is a trespass onto Appellant's property and is required to be repositioned onto Appellee's roof?
   a. Even if the trial court finds Appellee to be the owner of the roof deck to the extent it extends over the deeded property line, why it failed to enjoin the water penetration into appellant's property caused by the deck post?
4. Whether the trial court erred in failing to determine that Appellee's water drainage diversion gutter is a trespass onto Appellant's property requiring removal from Appellant's property and redirection into Appellee's own downspout?
5. Whether the trial court erred in denying Appellant's request for a permanent injunction?
6. Whether the trial court's February 12, 2016 Order was a final order per Pa.R.A.P. 341?
7. Whether the trial court erred in denying Appellant's Motion for a Directed Verdict and by finding in favor of Appellee as to Counts I and II of his Counterclaim to quiet title where Appellee failed to sufficiently describe[] the land in controversy?
8. Whether the trial court erred in failing to identify the precise location of the property line between 1715 Moravian Street and 1717 Moravian Street on which Appellee must construct a firewall as required by Item Number 8 of the Court's March 16, 2016 Order?

## II. Discussion

This Court ruled as it did in order to preserve the value of each of the affected properties to the maximal extent, given that the encroachment was *de minimis* and given the Court's equitable powers.

Where, as here, the trial court sits as the sole finder of fact, an appellate court will not reverse on appeal unless the trial judge's findings are unsupported by competent evidence. *Doman v. Brogan*, 592 A.2d 104, 110 (Pa. Super. 1991). The question of what constitutes a boundary line is a matter of law while the location of that boundary line is a matter for the trier of fact. *Plott v. Cole*, 547 A.2d 1216, 1219 (Pa. Super. 1988) (abrogated on other grounds by *Zeglin v. Gahagen*, 812 A.2d 558 (Pa. 2002). In a boundary dispute case, as in a general action in

3

ejectment, an appellate court will not reverse the trial court's findings of fact if they are supported in the certified record. *Id.; see also Plauchak v. Boling*, 653 A.2d 671, 675 (Pa. Super. 1995).

The scope of appellate review of a ruling in equity is particularly limited, and such a ruling will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Daley v. Hornbaker*, 472 A.2d 703 (Pa. Super. 1984); *Lynch v. Hook*, 444 A.2d 157 (Pa. Super. 1982). The test is not whether the reviewing court would have reached the same result on the evidence presented, but whether the trial judge's conclusion can reasonably be drawn from the evidence. *In re Estate of Tippins*, 408 A.2d 1377 (Pa. 1979); *Hoffman v. Gekoski*, 378 A.2d 447 (Pa. Super. 1977). Where a reading of the record can reasonably be said to reflect the conclusions reached by a trial court sitting in equity, an appellate court will not substitute its judgment for that of the trial court. *Frowen v. Blank*, 425 A.2d 412 (Pa. 1981).

The plaintiff's first point of error goes to the heart of the litigation: did this Court err in finding that the defendant was the legal owner of his third floor powder room and the plumbing servicing it on the second floor, and the roof deck, to the extent that they extend over the deeded property line between 1715 Moravian Street and 1717 Moravian Street? This Court found that the encroachment was *de minimis*, and to require demolition of the powder room and roof deck would have been an equitable disaster.[3] The plaintiff did not establish that it had suffered any significant harm or loss either before or upon belated discovery of the encroachment, which was there for years prior to its discovery by the plaintiff. On the other hand, to require that the

---

[3] "The doctrine is set forth in the maxim, '*de minimus non curat lex*,' which means that the law will not concern itself with trifles. More specifically it means that a court will not grant equitable relief to a plaintiff who seeks a decree which will do him no good but which will work a hardship on another." *Yeakel v. Driscoll*, 467 A.2d 1342, 1344 (Pa. Super. 1983) (*citing Bristol-Myers Co. v. Lit Brothers, Inc.*, 6 A.2d 843 (Pa. 1939).

4

powder room be demolished would cause a serious diminution to the defendant's property and property value. The equities could not be clearer, in favor of the defendant.[4]

The plaintiff next claims that this Court erred in permitting the defendant to tack his predecessors' periods of possession to comply with the Doctrine of Consentable Lines' required 21 year period of possession. Where a consentable line has been clearly established by dispute and compromise, the line becomes binding under application of the doctrine of estoppel after twenty-one years. *Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926, 930 (1988) *(en banc)* *(citing Newton v. Smith*, 40 Pa. Super. 615, 616 (1909)). This rule also applies where the consentable line was established by recognition and acquiescence. *Plauchak v. Boling*, 653 A.2d 671, 677 (Pa. Super. 1995).

"The doctrine of consentable line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation." *Plott,* 547 A.2d at 1220. There are two ways in which a boundary may be established through consentable line: (1) by dispute and compromise, or (2) by recognition and acquiescence. *Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926, 930 (Pa. Super. 1988) *(en banc).* As the *en banc* court explained in *Niles,* the doctrine of consentable line is a separate and distinct theory from that of traditional adverse possession, although both involve a twenty-one year statute of limitation. *Id.* at 267-68, 545 A.2d at 930. Under the doctrine of consentable line, "[i]f adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary

---

[4] The plaintiff brings, as a sub-claim, an inquiry as to whether this Court considered certain code violations found in the Municipal Court, an inferior court, on February 18, 2016, after the close of evidence in this matter. The answer? Certainly not. It would be improper to import, after the close of evidence and completely out of context, the findings of another court as to another matter. In fact, such consideration would raise important due process concerns. It is of no event, because the zoning issues are not relevant to the equitable determination this Court has made, despite the plaintiff's aggressive marketing of its "unclean hands" allegations.

5

line thus recognized and acquiesced in is not the true one." *Plott*, 547 A.2d at 1221 (*citing Adams v. Tamaqua Underwear Co.,* 161 A. 416 (Pa. Super. 1932); 12 Am.Jur.2d, Boundaries §§ 85-90). The establishment of a consentable line is not a conveyance of land within the meaning of the Statute of Frauds because no estate is thereby created. *Hagey v. Detweiler,* 35 Pa. 409, 412 (1860). Therefore such a line may be initiated by oral agreement and proved by parol evidence. *Beals v. Allison,* 54 A.2d 84, 85 (Pa. Super. 1947).

In *Zeglin v. Gahagen,* 812 A.2d 558, 561 (Pa. 2002), our Supreme Court reexamined the law of establishment of a boundary line by acquiescence, which has long been a feature of Pennsylvania law. "Two elements are prerequisites [to establishment of a boundary by acquiescence]: 1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of twenty-one years." *Id.* at 561 (*citing Jedlicka v. Clemmer,* 677 A.2d 1232, 1235 (Pa. Super. 1996); *Plott,* 547 A.2d at 1221). *Zeglin* also clarified the application of tacking, the joining of consecutive periods of possession by different persons to treat the periods for legal purposes as one continuous period. "We hold, therefore, that tacking is permitted in such context [claims brought under a theory of acquiescence in a boundary] upon sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest." *Id.* at 566. *Zeglin* applied the 21-year statute to such claims ("After 21 years, the chips will be allowed to fall where they may, for reasons of equity and peace." *Id.*) (citation omitted), and confirmed that privity of possession was sufficient to enable landowners

6

to tack their predecessor's period of ownership.[5] Because the defendant established privity of possession, tacking was appropriate in this case, and this claim of error is meritless.[6]

The plaintiff also claims that this Court erred in failing to determine that a certain post that is part of the defendant's roof deck must be repositioned, as it is five to six inches past the property line. This is another instance where, at best, the plaintiff has established *de minimis* encroachment, and "the mere existence of an encroachment is not adequate to justify equitable relief." *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1147 (Pa. Commw. 2008). Further, as to the roof deck, where the defendant's alleged encroachment would be impossible for the plaintiff not to have noticed, the doctrine of laches applies. "The doctrine of laches is an equitable bar to the prosecution of stale claims and is 'the practical application of the maxim that 'those who sleep on their rights must awaken to the consequence that they have disappeared.'" *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014) (*citing Kern v. Kern*, 892 A.2d 1, 9 (Pa. Super. 2005)

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the

---

[5] *See* 3 Am.Jur.2d Adverse Possession § 79 ("Privity of possession is a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law.").

[6] In its post-trial brief, the plaintiff attempts to cite *Zeglin* as some sort of wholesale endorsement of the position articulated in *Baylor v. Soska*, 658 A.2d 743, 746 (Pa. 1995), that "the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed." *See* Plaintiff's Post Trial Brief, filed 10.28.2015, p. 25. At a minimum, the plaintiff should be reminded of the necessity of reading the entirety of a case before citing that case. The cited quotation, which the plaintiff offers as if it were the holding of *Zeglin*, is actually quoted in *Zeglin* to distinguish *Baylor* from cases in acquiescence: "Although *Baylor* was a boundary case, it proceeded on the theory of adverse possession, as opposed to acquiescence. While we recognize that this is a fine basis for distinction given the relatedness of these doctrines, strict application of *Baylor*'s holding in the acquiescence paradigm would eliminate tacking in cases involving successive owners and mistaken boundaries, which would appear to be the prevailing set of circumstances in this line of decisions ... Accordingly, we find the majority view (requiring only privity of possession) better suited to claims brought under a theory of acquiescence in a boundary." *Id.* at 565-66.

7

> respondents resulting from the delay. Moreover, the question of
> laches is factual and is determined by examining the circumstances
> of each case.

*Estate of Scharlach*, 809 A.2d 376, 382–383 (Pa. Super. 2002) (*quoting Sprague v. Casey*, 550 A.2d 184, 187-88 (Pa. 1988)). Philadelphia rowhome roof decks are a common feature, and are very hard to miss, unlike an intrusion into a shared wall that does not protrude into the interior of one's home. The deck was installed prior to 1987, and there is no evidence that the alleged intrusion of this post came into being after the deck's installation. Yuko Omori, the prior owner of the house and a partner in the plaintiff organization, came to own 1717 Moravian Street in 1994, over twenty years ago.[7] Given the *de minimis* nature of the alleged intrusion, the longstanding and obvious existence of the deck in its current state, and the inconvenience at this late date of repositioning any aspect of the deck, to the extent that the deck is not governed by acquiescence, this claim falls to laches. The plaintiff cannot claim to have been duly diligent in ignoring the roof deck for these last few decades, given its open and notorious nature. If the claim had been raised closer to the time of the roof deck's building, it would have been much easier to get the original builder to return and correct any minor flaws, but at this late date it is as if the defendant is starting from scratch in that regard. Because the defendant established a lack of diligence, a delay arising therefrom, and prejudice, this claim is meritless.

The plaintiff also claims that this Court erred in failing to enjoin what it describes as "water penetration" caused by the deck post. The evidence as to water penetration was weak at best – again, this post has been present for many decades, so if it was causing some sort of serious rip in the plaintiff's roof, this would have been readily apparent long ago. The plaintiff

---

[7] The fact that Ms. Omori has transferred ownership of the property to a corporation of which she is a partner cannot vitiate the laches issue, because to hold otherwise would enable any claim that would otherwise fail to laches to be revived by creation of a holding company for the sole usage and benefit over the party whose claim has thereby lapsed.

8

has not established that it is harmed, that it acted with due diligence, or that it cannot, given present conditions, control its own roof. This claim fails.

The plaintiff further claims that the water drainage situation is a trespass. Again, this is a state of affairs that has been constant and ongoing for decades. For the reasons stated above, the plaintiff cannot establish due diligence and the claim fails.

The plaintiff claims that this Court erred in denying a permanent injunction. In order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. *See Boyle v. Pennsylvania Interscholastic Athletic Ass'n., Inc.*, 676 A.2d 695, 699 (Pa. Commw. 1996); *Buffalo Twp. v. Jones*, 813 A.2d 659, 663 (Pa. 2002). For all the reasons explained above, the plaintiff has failed to do that, and the injunction was rightfully denied. This is just a rehashing of the other issues raised by the plaintiff under another heading.

The plaintiff asks in its sixth claim of error whether the Court's order of February 12, 2016 is a final order under Pa.R.A.P. 341. This is an unusual point of error, as it is not clear what the plaintiff is arguing. Perhaps this question is directed at the Superior Court, which quashed the appeal at 1398 EDA 2016 as unnecessarily duplicative. In any case, this is not a statement of error, and therefore it has no place in a concise statement of errors.

In its seventh claim of error, the plaintiff argues that this Court erred in failing to enter a directed verdict as to counts one and two of the defendant's counterclaim as to quiet title, because of the defendant's alleged failure to describe the land in controversy. This is silly. Each side in this litigation paid a surveyor. The land in controversy was mapped, plotted, and described *out of all proportion* to its size and impact. If the land in controversy has not been adequately described, then how does the plaintiff suppose that it has made out any kind of case? This claim is meritless.

9

In its eighth claim of error, the plaintiff argues that this Court erred in failing to identify the precise location of the property line for construction of the firewall. This argument is waived for failure to raise it at any point earlier in the litigation, and is meritless for the reasons discussed in the preceding paragraph.

Finally, the defendant brings six claims of error as well, all involving the firewall. The defendant claims that this Court erred in ruling that the defendant must construct a firewall by a) ruling against the greater weight of the evidence; b) failing to consider whether the City of Philadelphia would require construction of a firewall, given the condition of the two properties; c) awarding relief beyond the scope requested by the plaintiff; d) failing to specify by order that the defendant himself did not build the powder room; e) failing to consider that the plaintiff removed materials that "could have sufficed" as a firewall; and f) failing to specify that the defendant is required only to build a firewall on the 1715 Moravian Street side of the property line.

Weight of the evidence claims acknowledge the sufficiency of the evidence, but argue only that the greater weight of evidence is against the verdict. A new trial should be awarded when the verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Mammoccio v. 1818 Market Partnership*, 734 A.2d 23, 28 (Pa. Super. 1999) (citations omitted).

The defendant's argument as to weight of the evidence depends entirely on whether or not there was evidence as to code violations, given that this Court excluded such evidence. That is plainly a *non sequitur*. The need for a firewall is not solely in order to satisfy building codes; there are also, of course, the reasons that the codes were established in the first place, like basic safety norms. The defendant's argument is fatally flawed, in that it depends entirely on

10

substituting code violation findings for the Court's equitable powers. Further, this is actually a sufficiency argument and not a weight argument. There was ample support for the Court's exercise of its equitable powers; this argument is meritless.

Next, the defendant faults the Court for failing to consider whether the City of Philadelphia would require construction of a firewall, given the condition of the two properties. However, the Court is not a mere instrument of the City's power. In fact, the Court derives its power from the Commonwealth, which is a higher level of government than the City. Whether the City would require a firewall is neither here nor there. This scope shift is inapposite and renders this point of error meritless.

The defendant claims that this Court erred in awarding relief that was beyond the scope of what the Plaintiff requested in its complaint. "Courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute." *Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co.*, 986 A.2d 914, 921 (Pa. Commw. Ct. 2009). The Court did not give the plaintiff all of the relief it requested in its complaint, because destruction of the powder room would diminish the defendant's property value to an extent completely out of proportion to the encroachment. However, the Court also wanted to recognize that the plaintiff should have the protection that a firewall will afford. This was within the Court's broad equitable powers, and therefore this claim is meritless.

The defendant claims that this Court erred in failing to specify by order that the defendant himself did not build the powder room. The defendant did not build the powder room, but what that has to do with the Court's order is unclear. In any event, hopefully this declaration will satisfy the defendant; however, he has not explained how he was prejudiced by the complained-of omission in the Court's order. This claim is meritless.

11

The defendant claims that this Court erred in failing to consider that the plaintiff removed materials that "could have sufficed" as a firewall. This is simply wrong. This Court considered all relevant evidence. Just because the defendant's encroachment is *de minimis* does not mean that it is nothing or that it has no effect. The firewall will help to set things right between the neighbors. Construction of the firewall is the right thing for the defendant to do, under the circumstances. This utterly speculative claim of error implicitly asks that the Court make a finding that the plaintiff removed materials that "could have" acted as a firewall, but the evidence did not establish the nature of the removed materials or that there was no necessity to remove them. The Court did not fail to consider this evidence; this allegation is completely baseless.

Finally, the defendant claims that this Court erred in failing to specify that the defendant is required only to build a firewall on the 1715 Moravian Street side of the property line. Here, the defendant is being willfully obtuse. The defendant is required to build a firewall on the property line. If you are the party that is arguing that an encroachment is not that big of an issue, you should not then put yourself in the position of being ultra-specific to the point of tone deafness about compliance with the Court's order. In other words, if with one breath you are arguing that your powder room is "close enough" to the property line, do not use the next breath to argue that the Court was not "close enough" in specifying where, in relation to the property line, the firewall should be constructed. This argument is also meritless.

## III.    Conclusion

For the foregoing reasons, the Court's verdict should be affirmed.

BY THE COURT,

_____
KENNETH J. POWELL, JR., J.

12